## U.S. BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

**MICHAEL C. WORSHAM**                     *

    *Plaintiff*                     *          Adversary Proceeding Complaint          #624674

v.                                      *          Challenging Dischargeability          PAID

                                    *          Under 11 U.S.C. §523(a)(6)          $350.00

**RAYMOND C. CARNEY**          * Underlying Bankruptcy Case #: 21-18673-CMG

                                    *                                   **FILED**

    *Defendant*                     *          **JEANNE A. NAUGHTON, CLERK**

*       *       *       *       *       *       *       *       *       *       *       *          FEB -7 2022

### COMPLAINT                                   U.S. BANKRUPTCY COURT
                                                 TRENTON, NJ
                                           BY _____ DEPUTY

The Plaintiff, Michael C. Worsham, sues the Defendant Carney for federal and Maryland

Telephone Consumer Protection Act (TCPA) telemarketing violations, for a conspiracy to initiate

and deliver pre-recorded voice telemarketing solicitation calls to Plaintiff's cellular phone number

that is on the National Do Not Call (DNC) list registry, to advertise and sell septic tank cleaning

products including *Activator 1000*. Defendant's telemarketing included patently illegal pre-recorded

voice solicitation messages to Worsham, failure to transmit caller ID name and number, failure to

identify the individual caller and calling company, and failure to provide a phone number or address.

In 1999 Worsham sued a defunct NJ company, D.J.C. Holding Company, for similar conduct

selling a product called *Septic Care*, and in 2004 related companies were the subject of an FCC

enforcement action, resulting in a June 26, 2006 Order of Forfeiture for $9,000 for TCPA violations.

On March 7, 2018 Worsham sued Defendant Carney and his company Carbro in the Circuit

Court for Harford County, Maryland for TCPA violations, which was stayed due to bankruptcy.

On July 15, 2021 Defendant Carney signed a "Stipulated Order for Permanent Injunction and

Civil Penalty Against Raymond Carney" in *U.S. v. Environmental Safety International, Inc., et. al.*,

Case #2:21-cv-13350-MCA-LDW (D. NJ) for alleged FTC violations based on conduct similar to

that alleged herein, and agreed to an injunction and non-dischargeable penalty of $15,000.

## PARTIES

1.  Plaintiff **Michael C. Worsham** resides in Harford County, Maryland, and was the subscriber to his land line number 410-692-2749, and to his cellular (wireless) telephone number 410-557-6192, at all times relevant to this suit, and these numbers have both been on the National Do Not Call (DNC) list since July 15, 2006, and both were used by Worsham for his personal and residential uses as residential lines during the times relevant to this suit.

2.  Defendant **RAYMOND C. CARNEY** ("Carney") is an individual and resident of N.J. Carney was the Registered Agent, Manager, and Authorized Representative of **Carbro Sales & Survey, LLC**. Carney is related to Joseph Carney and Sean Carney, who were officers in one or more previous companies used to sell a septic tank product through similar illegal prerecorded messages, and who were both specifically named by the FCC in its April 30, 2004 Citation to the previous companies, and in the FTC's 2021 enforcement action.

3.  **Carbro Sales & Survey, LLC** ("Carbro") was a New Jersey for-profit corporation, #0400344593, which Carney incorporated on April 23, 2010 for the officially stated purpose of telemarketing, but which has been in a revoked status for not filing an annual statement with the state of NJ. On information and belief, the "Car" in "Carbro" comes from the name Carney, and the "bro" comes from the word "brothers." Carbro had no known street address, and did business out of P.O. Box 368, Toms River, N.J. 08757, and from the email address activator1000@gmail.com, and the number (888) 577-0074.

## ALLEGATIONS

### Worsham's 1999 lawsuit against D.J.C. Holding Corp.

4.  Defendants are the effective successors of several NJ companies led by Carney and/or relatives of Carney, who in 1995 incorporated D.J.C. Holding Corporation at 205 Anderson Ave., Fairview, NJ, 07022, for the officially stated purpose to sell a septic tank maintenance product called *Septic Care*.

5.  On May 20, 1999 Worsham sued D.J.C. Holding Corporation in Case #12-C-99-1318.

6.  The 1999 suit was for making prerecorded messages calls to sell a septic care product that were similar to the alleged calls in the instant suit, including touting that the product was government approved, and the request for the call recipient to leave their phone number.

7.  On January 3, 2001 the case was settled and dismissed.

8.  After Worsham's 1999 suit was settled in 2001, the NJ business registration for D.J.C. Holding Corporation was revoked.

### FCC Enforcement Action

9.  On April 30, 2004 the FCC issued Citation EB-04-TC-064 for TCPA violations against

numerous entities, including Environmental Safety International, Inc., Septic Safety, Inc., EPI, Inc., ESI Products, and DJC Holding Company, and named Joseph Carney and Sean Carney as the officers of one or more of these companies.

10.   On February 3, 2005 the FCC release an Notice of Apparent Liability for Forfeiture (NAL) against the companies, after no response was made to the FCC's Citation.

11.   On February 18, 2005 Joseph Carney sent a letter to the FCC as President of ESI, stating that Septic Safety, Inc. and DJC Holding are no longer business, and that since 1999 he has been selling septic treatment products under the name Environmental Safety International, Inc. in Ridgefield, NJ, and under the name Environmental Products in Toms River, NJ.

12.   On June 22, 2006, despite Joseph Carney's response, the FCC issued an Order of Forfeiture #EB-04-TC-064 against the ESI companies for $9,000 for TCPA violations.

### Defendant's prerecorded voice messages

13.   Defendant, in concert with his relatives and through the mutual assistance of other persons or entities, engaged in a wide-ranging and criminal and civil conspiracy to call consumers, including at phone numbers that are on the National Do Not Call (DNC) list Registry, using an automatic telephone dialing system (ATDS), to initiate and deliver artificial or prerecorded voice call messages for the purpose of encouraging people to buy septic care products and/or services.

14.   Defendant initiated calls and delivers prerecorded messages, but on information and belief, intentionally did not deliver messages if they reached the recipient's voice mail.

15.   Defendant transmitted false or spoofed Caller ID numbers, and false or else no name information, in the calls which delivered prerecorded messages.

16.   Defendant's prerecorded voice telemarketing messages used a male voice that starts out saying "*This is not a sales call or solicitation*" and described and advertised a septic care product with phrases like "*environmentally friendly,*" and "*USDA approved*", and advertised that the product will stop "*costly repairs,*" and the message ended by asking the recipient of the call to leave their name, phone number and address.

17.   Defendant's prerecorded voice telemarketing messages did not identify the company, or the individual caller.

18.   Defendant's prerecorded voice telemarketing messages do not identify any phone number or address.

19.   Plaintiff alleges he received the following calls and prerecorded voice solicitation messages without his permission from Defendant, and possibly other persons and companies that Defendant conspired with to call Plaintiff's cell number 410-557-6192:

### Defendant's initiated prerecorded calls to Plaintiff's numbers at least 3 times

| Call # | Date of Call | Time of Call | Number called | Call Length | Number/ Name on Caller ID |
|---|---|---|---|---|---|
| 1. | Aug. 5, 2017 | 9:08 AM | 410-557-6192 | 1 min. 21 sec. | 425-954-5298 /Washington |

**Call 1 details:**

Defendant's August 5, 2017 call woke Plaintiff up on a Saturday morning. The prerecorded voice message was in an unidentified male voice that was very clear. The message started by stating that it was not a sales call, and then proceeded to give a sales pitch for and environmental product that it stated was for septic cleaning. No names or phone number was given during the message. Plaintiff pressed 1 to find out who called, but no one was on the line, and a prerecorded message asked me to leave my contact information. Plaintiff did not leave contact information, and the call disconnected by itself.

| | | | | | |
|---|---|---|---|---|---|
| 2. | Aug. 14, 2017 | 8:55 AM | 410-557-6192 | 1 min. 50 sec. | 740-233-2932/Ohio |

**Call 2 details:**

Defendants' August 14, 2017 call woke Plaintiff up, and at the end of Defendants' prerecorded call message #1, Worsham left the name Craig Worsham and his mailing address in Forest Hill, but specifically did <u>not</u> leave his phone number. The prerecorded voice message was in an unidentified male voice and stated the following:

*"Hello, this is not a sales call or a solicitation. We're calling from an environmental company, with information for all septic tank and cesspool owners. We would like to give you some free info on our environmentally safe all natural septic tank cleaning product. The product is U.S.D.A. approved for safety and is fully guaranteed to eliminate the need for tank pump outs and prevent any costly repairs by maintaining your entire septic system or cesspool. If you'd like free information on how to maintain your system and protect the environment, please press 1. If you like to be removed from our calling list please press 2."*

An audio recording of the same prerecorded message in Call #1 that Worsham received is at:     https://www.nomorobo.com/lookup/740-233-2932

| | | | | | |
|---|---|---|---|---|---|
| 3. | Dec. 1, 2017 | 9:12 AM | 410-557-6192 | 2 min. 3 sec. | 352-358-7175/Florida |

**Call 3 details:**

Worsham answered and heard the same prerecorded message in the clear male voice that he heard in Calls 1 and 2. A recording of the message in Call 3 is available here:
https://www.nomorobo.com/lookup/352-358-7175

Worsham pressed 4 at the end of Defendants' prerecorded call message 3, to try to identify the caller, and after pressing 4, he heard part of the same prerecorded messages in the same male voice that ended again with an instruction to press 1. Worsham then pressed 1, and got a message in an unidentified voice asking him to leave his name, phone number, and address. Worsham left his name & address but did <u>not</u> leave his phone number.

| Call # | Date of Call | Time of Call | Number called | Call Length | Number/ Name on Caller ID |
|--------|-------------|--------------|---------------|-------------|---------------------------|
| 4. | Dec. 4, 2017 | 5:24 PM | 410-557-6192 | 0 (missed) | 848-238-7958/NJ |
| 5. | Dec. 4, 2017 | 5:25 PM | 410-557-6192 | 0 (missed) | 848-238-7958/NJ |
| 6. | Dec. 4, 2017 | 5:25 PM | 410-557-6192 | 9 min. 58 sec. | 848-238-7958/NJ |

In Call 6 a live female sales agent came on who possibly gave her first name, but who never identified the name of the company. She described the septic product being sold as called Activator 1000, and asked questions about Worsham's septic system. Worsham asked her questions about the product, and she answered them, and said no credit card was required until after they sent the product, which weighed about 5 pounds. She said it was in a powder form, and 2 ounces are used every 2 months. She said a 3-year supply costs $149. She suggested government approval of their product. She had Worsham's address, which Worsham confirmed, but she said another woman would call again to confirm Worsham's address. Near the end of the confirmation, Worsham asked for their phone number, and the woman gave her direct dial number as 732-604-5080.

| 7. | Dec. 4, 2017 | 5:35 PM | 410-557-6192 | 2 min. 35 sec. | 732-998-8097/NJ |

Call 7 was a live call from a sales rep who identified herself as Petra with the shipping department, but who never gave the company name. Petra started out by saying the call would be recorded. Petra confirmed Worsham's address for sending a 3 year supply via Federal Express, and when he asked, said he did not have to be home to sign for the package.

20. Defendant and his company never sent Worsham any package via Federal Express.

21. On information and belief, Defendant did not send the package because they feared they would be sued.

22. Worsham could not have discovered Defendant's responsibility for the calls earlier due to Defendant's failure to comply with required identification disclosures.

### Defendants' MyActivator1000.com website

23. Defendant and his now-defunct company Carbro sold the septic care produce and services at the now-defunct website https://myactivator1000.com.

24. Defendant sold a 3 years supply of Activator 1000 at this specific part of the defunct website:      https://myactivator1000.com/collections/septic-tank-treatment-products /products/activator-1000-septic-tank-cleaning-powder-formula

25. Defendant's defunct website https://myactivator1000.com has their sales number 888-577-0074, but did not have any street mailing address identified.

26. On Jan. 18, 2017 Worsham purchased Odor Control Septic Treatment for $29.90 from Defendant's now defunct Activator1000.com website, in order to try to identify Defendant and Defendant's address.

27. On January 19, 2017 Defendant and his company refunded Worsham's $29.90 without stating why or contacting Plaintiff.

28. The email notices for Worsham's $29.90 purchase did not include Defendant's or his defunct company's name, and had no mailing address or phone number.

29. PayPal email notices for Worsham's $29.90 purchase, and refund, both identified the seller as "Cabro Sales and Survey," but included no mailing address.

### Possible additional calls from Defendant

30. Plaintiff may have also received additional calls on other dates from Defendant or his agents or contractors as part of Defendant's telemarketing practices and conspiracy over which Defendant exercised control, using different numbers, Caller IDs and prerecorded messages, but can not be certain, because Defendant hid the calls and avoided contact by call recipients like Plaintiff, by bypassing or delivering faked or spoofed Caller ID, giving no name of the individual callers in its prerecorded messages, failing to identify itself in its messages, failing to include in the messages an address or website that identify Defendants, by using different numbers to avoid detection, by failing to identify itself during life sales calls, by failing to include a street address in communications, by misleading people with a message that asserts their calls are not a sales call or solicitation, by avoiding delivering the messages on the call recipient's voice mail, by doing business through an LLC with no known address or officers, and other misleading, deceptive, and fraudulent ways.

31. On information and believe Plaintiff alleges that Defendant or his agents used a service that spoofs the caller ID number transmitted by Defendants during the prerecorded messages calls to be in other area codes besides N.J., such as in Washington, Ohio or Florida as in the calls alleged herein that Plaintiff received.

32. Defendant's assertion that the septic care product is government approved is false and misleading and fraudulent, and a violation of FTC and FCC regulations.

33. On April 23, 2018 Defendant Raymond Carney called Worsham in the early evening, and explained that Worsham's online order for Activator 1000 on January 18, 2017 through Defendant's now-defunct website was cancelled and refunded, because Worsham was on a list Defendant used to screen or filter out people who should not be sold to, although he did not explain why Worsham was on this "do not do business with" list.

34. The voice of Defendant Raymond Carney that Worsham heard during his April 23, 2018 call to Worsham sounded like the same voice in the prerecorded voice messages alleged herein.

35. Raymond Carney's voice was used in the prerecorded voice messages alleged herein.

## Non-dischargeability allegations

36. Plaintiff's injury was done by Defendant with the intent to cause harm or with the knowledge that the harm was substantially certain to result from his actions.

37. Injury from the making, initiating, sending and delivery of unsolicited prerecorded voice telemarketing messages (hereinafter "robocalls") is well known and common knowledge.

38. The injury from robocalls is one of the top if not the top consumer complaint made to federal agencies like the FTC and FCC.

39. On December 22, 2021 the FCC issued a report to Congress which found that "From January 1, 2016 through November 30, 2021, the Commission has received 365,867 informal consumer complaints alleging a violation of 227(b), 652,955 informal consumer complaints alleging a violation of 227(c), 253,489 informal consumer complaints alleging a violation of 227(d) and 254,714 informal consumer complaints alleging a violation of 227(e)." The FCC Report is at: https://docs.fcc.gov/public/attachments/DOC-378593A1.pdf

40. Defendant would have not only believed, but would have known, that the making, initiating, sending and delivery of robocalls was substantially certain to cause the injury that both the federal and Maryland TCPA were meant to protect against, including invasion of privacy, nuisance, annoyance, fraud, etc.

41. Defendant knew his conduct was substantially certain to cause the injury as demonstrated by the efforts he took to avoid discovery or identification by call recipients, by his own relatives' past legal troubles with the FCC for similar conduct, and by his admission to Plaintiff that he used a list of persons to avoid doing business with.

42. Defendant intentionally created, initiated, sent, made, and delivered the robocalls in violation of the laws, which was the cause of the invasion of privacy, nuisance, annoyance, fraud, etc.

43. Defendant engaged in his conduct for gain and profit and without any just cause or excuse.

44. The U.S. District Court for the District of N.J. ordered in a Stipulated Order entered on July 15, 2021 and which Carney signed on March 19, 2021, that "Defendant Raymond Carney agrees that the civil penalty judgment represents a civil penalty owed to the government of the United States, is not compensation for actual pecuniary loss, and, therefore, as to Raymond Carney, it is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7)."

45. Plaintiff alleges Carney's debts owed to him for TCPA violations in his Harford County, MD suit and re-alleged herein are not dischargeable due to fraud and malicious injury to plaintiff.

46. Worsham seeks a ruling that all TCPA claims in his March 7, 2018 MD lawsuit are not dischargeable, and a lifting of the stay so that those claims (re-alleged herein) may either continue there or be litigated here.

## **Additional Allegations**

47. Defendant's calls were initiated to deliver a prerecorded voice solicitation message.

48. Defendant was not identified during any part of any of the prerecorded voice messages.

49. Defendant exercised decision-making control over the respective policies, procedures and business practices, and made the decisions causing the violations alleged.

50. Defendant intentionally: (1) conspired and aided and abetted to call Plaintiff's and many other numbers despite the numbers being on the national DNC registry, (2) used pre-recorded voice messages, (3) did not identify himself or otherwise in the prerecorded messages, (4) called so inaccurate, false or incomplete Caller ID was transmitted, (5) avoided delivering the messages on the call recipient's voice mail, (6) did not identify the caller in the prerecorded messages, (7) did not identify himself or his company in any way during additional calls that Worsham had to go through just to try to identify who was calling him, (8) tried to dissuade the call recipients from complaining about the illegal nature of the prerecorded messages with a false introduction that the call or message was not for sales or a solicitation, all to try to avoid federal, state, or private enforcement actions.

51. The purpose of Defendant's telemarketing and of the calls and messages was to encourage purchase or rental of, or investment in, property, goods, or services offered by Defendant.

52. Defendant's prerecorded calls all failed to transmit or include the actual name of the caller.

53. Defendant's calls failed to transmit Defendant's phone number and name to or on Caller ID.

54. The name of the telemarketer was available for Caller ID transmission by both Plaintiff's and Defendant's carriers (including any contractors or agents or carriers used by Defendant).

55. In Oct. 2016 Worsham sent a FOIA request to the FCC, and on January 4, 2017 the FCC sent Worsham a letter stating *"The second part of your letter seeks a list of all carriers identified by the FCC who are not capable of transmitting the name of the telemarketer as part of Caller ID transmission. We conducted a search and did not locate any responsive records."*

56. Plaintiff's Caller ID equipment can and regularly does transmit the name of the caller, and both his and the Defendants' carriers are capable of transmitting the name of the caller.

57. Plaintiff had no business relationship of any kind with, and did not gave any prior permission to be solicited by Defendant or his company, affiliates, agents, contractors or partners.

58. Defendant's calls could not have been possible without Defendant's conspiracy, and without aiding and abetting, with other persons or entities with whom Defendant called Plaintiff, including one or more of the person(s) or entities who did or may have provided:

   (1) a voice for the prerecorded voice messages, (2) a script for the prerecorded voice

messages, (3) a list of phone numbers to be called including Plaintiff's number, (4) automated equipment to dial many numbers and deliver the prerecorded voice messages to Plaintiff and others, (5) Caller ID spoofing or masking services, (6) advice on telemarketing and creating and delivering prerecorded messages, including avoiding legal liability.

59. Defendant's prerecorded message Calls 1, 2 and 3 are criminal violations of the Maryland Annotated Code, Public Utility Companies Article, § 8-204(b), which prohibits a person to *"use an automated dialing, punch-button, or tone-activated address signaling system with a prerecorded message to: (1) solicit persons to purchase, lease, or rent goods or services; (2) offer a gift or prize; (3) conduct a poll; or (4) request survey information if the results will be used directly to solicit persons to purchase, lease, or rent goods or services."*

60. Defendant's prerecorded message Calls 1, 2 and 3 are criminal violations of the federal Truth in Caller ID Act of 2009, codified at 47 U.S.C. § 227(e), which makes it unlawful for any person in the U.S. "in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value."

## Automatic Dialing and TCPA Allegations

61. Defendant's calls and messages were all initiated and made with an *'automatic telephone dialing system'* (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

62. Defendant's telephone calls to Plaintiff violated the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b), and the FCC's regulations promulgated pursuant to the TCPA located at 47 C.F.R. § 64.1200.

63. Defendant's telephone calls to Plaintiff violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6601-6108, as implemented by the Federal Trade Commission (FTC) in the Telemarketing Sales Rule, 16 C.F.R. Part 310.

64. Defendant made and assisted substantially to the initiation of telephone solicitations to the Plaintiff in violation of the TCPA and FCC regulations, on, but possibly not limited to, the dates listed in this Complaint.

65. Defendant intentionally, personally and substantially participated to help arrange for the solicitation calls to be initiated and ultimately delivered to Plaintiff's phone number.

66. Defendant made more than one call within a one year period to Plaintiff in violation of the TCPA and the FCC and FTC regulations.

67. FCC regulations 47 C.F.R. § 64.1200(d)(4) and 47 C.F.R. § 64.1601(e) were promulgated pursuant to U.S.C. § 227(b)(2).

68. Defendant was a *telemarketer* engaged in *telemarketing* as defined by the FCC and FTC.

## Willful and Knowing Conduct Allegations

69.   Defendant conspired and aided and abetted with others to call Plaintiff and many others in
      Maryland knowing that their calls would be calling into Maryland.

70.   Defendant through his conspiracy and aiding and abetting to call Plaintiff and others in
      Maryland had numerous, substantial and continuous contacts with MD through the calls,
      even if as it is alleged herein that Defendant called from a location in New Jersey.

71.   Plaintiff's 410-557-6192 number has been on the national DNC list registry continuously
      since July 15, 2006, both prior to and at the time of all of Defendant's calls and/or messages.

72.   Defendant willfully and knowingly ignored the national DNC list registry.

73.   Defendant failed to pay the annual fee for access to telephone numbers within Plaintiff's area
      code 410 that are included on the national DNC list Registry maintained by the FTC.

74.   Plaintiff alleges that Defendant was aware of their TCPA violations, including through
      complaints from consumers and call recipients, prior to any calls made to the Plaintiff.

75.   Defendant was aware of, and knew about and approve of, the telemarketing calling patterns
      and practices used in any equipment or call center used by any agent or contractor.

76.   Defendant profited by and through the telemarketing calling patterns and practices used, and
      through any conspiracy to call and as part of the calls.

77.   Defendant Carney knew of and ratified the acts and conduct of all persons involved with the
      calls, including by any employees, agents, contractors or others doing the calling, including
      any used to call Plaintiff, and profited or benefitted by the ratification of these acts.

78.   Defendant willfully and knowingly failed to clearly identify himself, the company, and
      the individual callers during the calls, and specifically did not provide the name of the
      individual callers, the names of themselves or any other persons on whose behalf the call
      was being made, and any website that identified Defendant or his defunct company or
      allows a do not call request to be made by an interactive voice- and/or key press-activated
      opt-out mechanism or otherwise.

79.   Defendant's violations were done '*willfully*' and '*knowingly*,' as the term '*willful*' is
      defined at 47 U.S.C. § 312(f) and 47 U.S.C. § 503(b), and as the term '*knowingly*' is
      defined in 47 U.S.C. § 223(b)(1), and as both of these terms are interpreted by the FCC.

80.   On information and belief Defendant made hundreds of thousands of dollars making
      illegal calls like the calls made to Plaintiff and others.

81.   Many complaints about Defendant's calls are posted online, including at this site:
      https://800notes.com/Phone.aspx/1-201-945-2119/10.

82.    Defendant had to know of the illegal nature of his conduct, and of its fraudulent nature,
since he knew his product or service was not approved by any governmental agency, and
that claiming so in the robocall messages was fraudulent and would cause injury.

## COUNTS 1-4 : TELEPHONE CONSUMER PROTECTION ACT (TCPA) VIOLATIONS

Plaintiff re-alleges all preceding paragraphs as if fully set forth herein, and further alleges that:

### COUNT 1 :  Failure to honor the National Do Not Call (DNC) list Registry

83.    Defendant's Calls 1-6 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(c)(2),

which prohibit telephone solicitations to a number registered on the National DNC registry.

### COUNT 2 : Failure to identify a telemarketer and their telephone number

84.    Defendant's Calls 1 to 6 violated the TCPA and FCC regulations at 47 C.F.R. §
64.1200(d)(4), which requires as minimum standards and procedures that *"A person or entity
making a call for telemarketing purposes must provide the called party with the name of the
individual caller, the name of the person or entity on whose behalf the call is being made,
and a telephone number or address at which the person or entity may be contacted."*

85.    Defendant violated 47 C.F.R. § 64.1200(d) by failing to institute procedures for maintaining
a list of persons who request not to receive telemarketing calls made by or on their behalf,
including but not limited to 47 C.F.R. § 64.1200(d)(4).

### COUNT 3 :  Failure to transmit full and complete Caller ID information

86.    Defendant's Calls 1 to 6 violated the TCPA and FCC regulations at 47 C.F.R. §
64.1601(e)(I), which requires that:

*"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must
transmit caller identification information . . .[and] must include either CPN or ANI, and,
when available by the telemarketer's carrier, the name of the telemarketer."*

### COUNT 4 : Calling a wireless and residential number without prior express consent

87.    Defendant's Calls 1 to 6 violated the TCPA at 47 U.S.C. § 227(b)(1)(A)(iii), and a similar
FCC regulation at 47 C.F.R. § 64.1200(a)(1)(iii), which provides that:

*"(1) Prohibitions: It shall be unlawful for any person . . .(A) to make any call (other than a
call made for emergency purposed or made with the prior express consent of the called
party) using any automatic telephone dialing system or an artificial or prerecorded voice -
(iii) to any telephone number assigned to a paging service, cellular telephone service . . ."*

<u>and/or it is also plead alternatively for this Count that:</u>

Defendant's Calls 1 to 6 violated the TCPA, 47 U.S.C. § 227(b)(1)(B), and FCC regulation at 47 C.F.R. § 64.1200(a)(3), which makes it unlawful to "*Initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.*"

## MARYLAND TELEPHONE CONSUMER PROTECTION ACT (MD-TCPA)

Plaintiff incorporates the above allegations, and further alleges the following violations of the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-14-3202, which prohibits a person from violating the federal TCPA, FTC Telemarketing Sales Rule, and/or the FCC and/or FTC telemarketing regulations, and which makes each prohibited telephone solicitation and each prohibited practice during a telephone solicitation a separate violation.

### COUNTS #5-11 : TCPA and FCC violations which also violate the Maryland TCPA

88.     **Count 5**: Defendant's violations in Count #1 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

89.     **Count 6**:  Defendant's violations in Count #2 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

90.     **Count 7**:  Defendant's federal TCPA violations in Count 3 above do not violate the MD-TCPA, and Worsham does not seek any damages for Count 7.

91.     **Count 8:** Defendant's violations in Count #4 above also violates the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 9 : Failing to state clearly the identity of the business, individual or entity responsible

92.     Defendant's Calls 1, 2 and 3 violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(1), which requires that:

"*All artificial or prerecorded voice telephone messages shall: . . .(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated*".

and this violates the MD-TCPA, MD Ann. Code, Commercial Law Art. §§ 14-3201-3202.

**COUNT 10 : Failing to state clearly the telephone number of the business or individual**

93.     Defendant's Calls 1, 2 and 3 violated the TCPA and FCC regulations at 47 C.F.R. §

64.1200(b)(2), which requires that:

> "*All artificial or prerecorded voice telephone messages shall: . . .(2) During or after the message, state clearly the telephone number (other than the that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. . . . For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign.*"

and this violates the MD-TCPA, MD Ann. Code, Commercial Law Art. §§ 14-3201-3202.

**COUNT 11 : Failing to provide an automated interactive voice opt out mechanism**

94.     **Count 11:**  Defendant's Calls 1, 2 and 3 violated the TCPA and FCC regulations at 47

C.F.R. § 64.1200(b)(3), which requires that:

> "*All artificial or prerecorded voice telephone messages shall: . . .(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or [wireless numbers] . . . provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section.*"

and this also violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202, because Defendant's separate failures to provide the required identification information precludes it from complying with this requirement for an automated, interactive voice- and/or key press-activated opt-out mechanism.

## COUNTS 12-18

**FTC Telemarketing Sales Rule (TSR) violations which also violate the Maryland TCPA**

95.     **Count 12:** Defendant's Calls 1, 2 and 3 violate 16 C.F.R. § 310.4(b)(1)(v), the FTC

regulation which makes it *"an abusive telemarketing act or practice and a violation for a*

*telemarketer to in, or for a seller to cause a telemarketer to engage in, the following*

*conduct: . . . (v) initiating any outbound telephone call that delivers a prerecorded message,"* and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

96.    **Count 13:** Defendant's Calls 1, 2, 3 and 6 violate 16 C.F.R. § 310.3(a)(2)(iii), the FTC regulation prohibiting a deceptive telemarketing act or practice in which any seller or telemarketer is *"misrepresenting, directly or by implication, in the sale of goods or services any of the following material information: . . . (iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer"* and this also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

97.    **Count 14:** Defendant's Calls 1, 2, 3 and 6 violate 16 C.F.R. § 310.3(a)(2)(vii), the FTC regulation which prohibits a deceptive telemarketing act or practice in which any seller or telemarketer is *"misrepresenting, directly or by implication, in the sale of goods or services any of the following material information: . . . (vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity"* and this also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

98.     **Count 15:** Defendant's Calls 1 to 6 all violate 16 C.F.R. § 310.4(a)(8), the FTC regulation which prohibits "(8) *Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call. "*, which violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

99.    **Count 16:** Defendant's Calls 1 to 6 all violate 16 C.F.R. § 310.4(b)(1)(iii)(B), the FTC regulation which prohibits initiation of *"any outbound telephone call to a person when . . .*

14

*(B) That person's telephone number is on the "do-not-call" registry,"* and this violation also

violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

100.   **Count 17:** Defendant's Calls 1 to 6 all violate 16 C.F.R. § 310.4(d)(1), the FTC regulation

which requires that a telemarketer "*disclose truthfully, promptly, and in a clear and*

*conspicuous manner to the person receiving the call . . . (1) The identity of the seller; (2) That*

*the purpose of the call is to sell goods or services; (3) The nature of the goods or services."*

and this violates the MD-TCPA, MD Ann. Code, Commercial Law Art. §§ 14-3201-3202.

101.   **Count 18:** Defendant's Calls 1 to 6 all violate 16 C.F.R. § 310.8(a), the FTC regulation

which makes it a violation of the TSR for:

"*any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to*
*any person whose telephone number is within a given area code unless such seller, either*
*directly, or through another person, first has paid the annual fee, required by § 310.8(a), for*
*access to telephone numbers within that area code that are included in the National Do Not*
*Call Registry maintained by the Commission,"*

and this violates the MD-TCPA, MD Ann. Code, Commercial Law Art. §§ 14-3201-3202.

## REQUESTED RELIEF

102.   Each failure on a separate occasion by a Defendant or his conspiring partners, employees,

agents and/or contractors to comply with the TCPA or FCC or FTC regulations constitutes

a separate violation of the federal TCPA, Maryland TCPA, and FTC regulations.

### Federal TCPA Damages

103.   The TCPA, 47 U.S.C. §§ 227(b)(3) and (c)(5) provides an explicit private right of action

for $500 in statutory damages for each violation of the TCPA or an FCC regulation issued

under the TCPA pursuant to 47 U.S.C. § 227(b).

104.   The TCPA, 47 U.S.C. §§ 227(b)(3) and(c)(5) explicitly provide for up to triple damages

if a Defendant willfully or knowingly violates the TCPA or the FCC regulations.

105.   **Counts 1 to 4:**

Plaintiff demands $1,500 for each separate violation of the TCPA and/or the FCC's

regulations, which includes treble damages for each willful or knowing violation of the

TCPA or FCC regulations, which is $6,000 in TCPA statutory damages for each of the 4

Counts, and for the 6 calls alleged, totaling **$36,000 in federal TCPA statutory damages**.

106.   The TCPA, 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5(A) provide for injunctive relief to enjoin violations of the FCC's regulations prescribed under the TCPA.

107.   Plaintiff requests injunctive relief prohibiting the Defendant from calling Plaintiff or any other persons in violation of the TCPA.

**Maryland TCPA Damages**

108.   **Counts 5 to 18**: For each of Calls 1 to 6, Plaintiff demands $500 for each of the separate violations of the Maryland TCPA in Counts 5 to 18 (except for Count 7), pursuant to MD Commercial Law Art. § 14-3202(b)(2), and reasonable attorneys fees as may apply.

109.   Plaintiff seeks the following Maryland TCPA statutory damages for Counts 5-18:

**Counts 5, 6, 8**: 6 calls x 3 Maryland TCPA violations  x $500/violation = **$  9,000**

**Counts 9-12**:  3 calls x 4 Maryland TCPA violations  x $500/violation = **$  6,000**

**Counts 13-14**: 4 calls x 2 Maryland TCPA violations  x $500/violation = **$  4,000**

**Counts 15-18**: 6 calls x 4 Maryland TCPA violations  x $500/violation = **$ 12,000**

**Total Maryland TCPA statutory damages                          = $ 31,000**

WHEREFORE the Plaintiff seeks jointly and severally from the Defendants **$36,000** in federal TCPA statutory damages, and **$31,000** in Maryland TCPA statutory damages, for a **Grand Total of $67,000** damages sought for the telemarketing solicitation violations identified thus far, an injunction prohibiting the Defendant or any persons under his control from calling or assisting with calling any persons in violation of the TCPA or FCC regulations, reasonable attorneys fees as may apply, costs, and other such relief as is just and necessary.

**JURY TRIAL DEMAND**

The Plaintiff requests a trial by jury for all matters triable by a jury.

Respectfully submitted,

*Michael C. Worsham*

Michael C. Worsham, Plaintiff, *Pro Se*
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net
February 2, 2022

# Michael C. Worsham

1916 Cosner Road
Forest Hill, Maryland 21050-2210
michael@magicmichael.net
410-557-6192

February 2, 2022

Clerk
U.S. Bankruptcy Court
for the District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street
Trenton, NJ 08608
Phone: (609) 858-9333
**SENT VIA PRIORITY MAIL**

**FILED**
JEANNE A. NAUGHTON, CLERK

FEB - 7 2022

U.S. BANKRUPTCY COURT
TRENTON, NJ
BY_____DEPUTY

Re:    New Adversary Proceeding Complaint: *Worsham v. Carney*.
Related to *In re: Carney*, Chapter 13 Case #21-18673-CMG

Dear Clerk,

Please find enclosed for processing and filing:

1.    Form 1040 (Adversary Proceeding Cover Sheet).
2.    Adversary Proceeding Complaint (16 pages).
3.    Cashier's/Certified check for $350 payable to "U.S. Bankruptcy Court."

I would like to be able to file electronically. I used to be an attorney, and have experience filing in several federal courts. I am currently permitted to file and am regularly filing electronically in my own cases, in *Worsham v. Discount Power, Inc.*, Case 1:20-cv-00008-RDB (D. Maryland), and *Worsham v. TSS Consulting Group, LLC, et al.*, Case 6:18-cv-01692-LRH (M.D. Florida), as well filing electronically regularly in my own cases the Maryland State courts. Please send me any forms required to apply for electronic filing privileges in this bankruptcy court.

Please contact me with any questions. Thank you.

Sincerely,

/s/ *Michael C. Worsham*

Michael C. Worsham

Enclosures: As stated.

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

| **PLAINTIFFS** Michael C. Worsham | **DEFENDANTS** Raymond Carney |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Pro Se | **ATTORNEYS** (If Known) Daniel E. Straffi 732-341-3800, bkclient@straffilaw.com |
|---|---|

| **PARTY** (Check One Box Only) ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☑ Creditor   ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor   ☐ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Plaintiff sued Defendant on March 7, 2018 in Harford County MD, Case #12-C-18-639 for telemarketing robocall violations of the federal and Maryland Telephone Consumer Protection Acts, 47 U.S.C. 227. Plaintiff contests the dischargeability of his claims in that suit.

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 67,000.00 |

| Other Relief Sought | Injunctive relief to the extent not already awarded by the U.S.D.C. for N.J. Ruling on dischargeability and lifting of the stay for Worsham's claims in his March 7, 2018 Maryland lawsuit. |
|---|---|

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR Raymond Carney | BANKRUPTCY CASE NO. 21-18673-CMG | |
| DISTRICT IN WHICH CASE IS PENDING NJ | DIVISION OFFICE Trenton | NAME OF JUDGE Christine M. Gravelle |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE February 2, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Michael C. Worsham _Michael C. Worsham_ | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

PRIORITY
MAIL ★

**Michael C. Worsham**
**1916 Cosner Road**
**Forest Hill, MD 21050**

UNITED STATES
POSTAL SERVICE ®
VISIT US AT USPS.COM ®
ORDER FREE SUPPLIES ONLINE

Clerk
U.S Bankruptcy Court for the
District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street
Trenton, NJ 08608



U.S. POSTAGE PAID
PM 2-Day
BEL AIR, MD
21014
FEB 03, 22
AMOUNT
**$8.95**
R2305E125051-05



08608



1006

PRESS FIRMLY

*PRESS FIRMLY*

how2recycle.info





*PRESS FIRMLY TO SEAL*

# FLAT RATE ENVELOPE
## ONE RATE ■ ANY WEIGHT

EXPECTED DELIVERY DAY: 02/05/22

USPS TRACKING® #

